

FILED
18 FEB -1 PM 3:40

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DOMINIK LAWRENCE GUY,<br>Defendant. | CASE NO. 17CR2507 WQH<br>ORDER |

HAYES, Judge:

The matter before the Court is the motion to suppress evidence and motion to return property (ECF No. 63) filed by Defendant Dominik Lawrence Guy.

### FACTS

On August 15, 2017, United States Border Patrol Agent Kalina Massie was conducting anti-smuggling operations in an unmarked vehicle, dressed in plain clothes with a ballistic vest outer layer marked "U.S. Border Patrol." Agent Massie worked in the Boulevard station for ten years prior to August 2017. Agent Massie started her shift at approximately 2 p.m. by going to the Golden Acorn Casino located on I-8. Agent Massie testified that the casino is one of the few businesses in the area and functions as a staging area for smugglers. As Agent Massie approached the casino she observed a Dodge Charger with two occupants and an Uber sticker leaving the casino, turning left onto Hwy 80, and traveling east back toward Boulevard.

At approximately 3:40 p.m., Agent Massie saw the Dodge Charger she had observed leaving the casino driven by a person who was later identified as the

Defendant at the intersection of Ribbonwood Road, Old Highway 80, and Jewel Valley Road, roughly 2.7 miles north of the United States-Mexico International Border. This is a mountainous, rural, sparsely populated area with rolling hills and valleys. Agent Massie testified that this area is frequently used by smugglers because of the easy access to the border, and the isolated terrain.

In addition to the driver, Agent Massie observed a front seat passenger in the vehicle. Agent Massie recognized the Charger as the vehicle she had seen approximately 15 minutes earlier at the Golden Acorn Casino with the same two occupants. Agent Massie testified that the vehicle was memorable because it had an Uber sticker in the window and that it is uncommon to see Uber stickers in this rural area. Agent Massie testified that the vehicle appeared to be riding lower than it was at the casino, that is, the body of the vehicle appeared closer to the wheel well. Agent Massie testified that the vehicle was entering the intersection from Jewel Valley Road onto Ribbonwood Road approximately 2.7 miles from the international border. Agent Massie testified that Jewel Road turned from a paved road to a dirt road, that Jewel Valley Road dead ended at the border fence and that Jewel Valley Road was known for its role in smuggling activity. Agent Massie testified that as a border patrol agent in the Boulevard area for ten years, it was suspicion to her that a Uber driver went down the Jewel Valley Road, a road known for picking up illegal aliens, but came back with the same number of visible passengers.

Agent Massie followed the Charger as it entered onto Ribbonwood Road and the onto Interstate-8 westbound. Agent Massie conducted a records check on the Charger which revealed that the vehicle was a rental, that the vehicle was not stolen, and that the vehicle had no recent border crossings. Agent Massie continued to follow the Charger as the driver drove on I-8 at approximately 50-60 miles per hour, a rate slower that the flow of traffic. Agent Massie testified that driving slow on the interstate was a common surveillance detection method. Agent Massie testified that she pulled along side the Charger and saw a person crouched in the passenger side back

seat appearing to be trying to hide from sight. Agent Massie testified that she was driving an SUV with a line of sight above the Charger and directly into the back seat of the Charger. Agent Massie called in for a vehicle stop of the Charger for suspicion of alien smuggling.

Another border patrol agent initiated a vehicle stop. The agent conducted an immigration inspection of the driver, the front seat passenger, and three passengers found in the back seat. The three back seat passengers were determined to be citizens and nationals of Mexico with no documentation allowing them to be in the United States legally.

Defendant was charged in an indictment with three counts of transportation of certain aliens in violation of 8 U.S.C. § 1324.

On January 19, 2017, the Court held an evidentiary hearing. The Court heard testimony from Agent Massie and from a defense investigator. The defense investigator testified that she conducted measurements of the height of the Charger's bumper with two people in the vehicle and with four people in the vehicle. The defense investigator testified that the weight of the four people equaled the weight of the five people in the Charger at the time of the stop. The defense investigator testified that the difference in the height of the bumper was approximately one inch.

**CONTENTIONS OF THE PARTIES**

Defendant contends that agent did not have reasonable suspicion to stop the vehicle that he was driving. Defendant asserts that the testimony of Agent Massie that the area was known for smuggling is not sufficient to form a reasonable suspicion to stop his vehicle. Defendant asserts that the testimony of Agent Massie that she observed someone crouching down in the back seat is not credible and does not justify the stop. Defendant contends that he was not violating any traffic laws, that he was acting in a normal and reasonable manner, and that he had not recently crossed the international border. Defendant contends that Agent Massie's observations do not constitute reasonable suspicion that he was engaged in alien smuggling.

The Government contends that the totality of the circumstances supported the reasonable suspicion that the Charger was engaged in criminal activity, including the vehicle's proximity to the border, the agent's observations of the vehicle, the suspicious driving pattern of the driver, and the agent's observations of a the person crouched down in the back seat.

## ANALYSIS

**A. Illegal stop**

"The prohibition of unreasonable searches and seizures extends to seizures of the person, including the brief investigatory stop of a vehicle." *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992). An agent may not detain a person without "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The agent making the stop must be "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). The requirement of a particularized suspicion includes an assessment based upon the totality of the circumstances as well as an assessment that arouses "a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime. *Id.* at 1129. "Whether reasonable suspicion exists depends upon the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

> In the context of stops made near a border, the Supreme Court has identified a non-exclusive set of factors that may be considered in determining whether reasonable suspicion exists: (1) characteristics of the area in which a vehicle is encountered; (2) proximity to the border; (3) usual traffic patterns on the particular road; (3) previous experience with alien traffic; (4) recent illegal border crossings in the area; (5) erratic or evasive driving behavior; (6) aspects of the vehicle; and (7) the behavior or appearance of the driver.

*United States v. Diaz-Juarez*, 299 F.3d 1138, 1141 (9th Cir. 2002) citing *Brignoni-Ponce*, 422 U.S. at 884–85, 95 S.Ct. 2574.

In *United States v. Arvizu*, 534 U.S. 266, 273 (2002), the United States Supreme Court explained:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See United States v. Cortez*, 499 U.S. 411, 418 (1981). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id.*, at 418, 101 S.Ct. 690. *See also Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere " 'hunch' " is insufficient to justify a stop, *Terry [v. Ohio], supra*, at 27, 88 S.Ct. 1868, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, *[United States v.] Sokolow*, [490 U.S. 1], at 7, 109 S.Ct. 1581.

In this case, the Court concludes that significant and particular facts support the reasonable suspicion of Agent Massie that the driver of the Charger was engaged in criminal activity. The agent was patrolling an area 2.7 miles from the international border known for high volume of alien smuggling. The agent had worked this area for ten years, and knew the area and the roads well. The agent credibly testified that she first observed the Charger leaving the casino parking lot with two passengers. The agent observed the Charger a second time fifteen minutes later at an isolated intersection exiting from Jewel Valley Road. The agent knew that the road became a dirt road, that the road dead ended at the international border, and that the road was commonly used for alien smuggling. The agent followed the Charger on to I-8 west and observed driving behavior consistent with surveillance detection activity. The agent pulled alongside the Charger. The agent credibly testified that she observed a person in the back seat crouching down attempting to hide from view. The agent reasonably relied upon her ten years of experience, specialized knowledge and training, as well as her observation of objective facts that supported legal wrongdoing. The

Court concludes that the totality of the circumstances presented in this case supports the reasonable suspicion of the agent that the Defendant was engaged in alien smuggling activity. Defendant's motion to suppress evidence based upon an illegal stop is denied.

**B. Return of property under Rule 41(g)**

Defendant moves the Court for an order requiring that the Government return two cell phones seized on the day of his arrest to the defense. The Government opposes the motion on the grounds that the phones serve an evidentiary purpose and were seized by the agents as an instrumentality of Defendant's alien smuggling crime.

Federal Rule of Criminal Procedure 41(g), "provides a mechanism by which a person may seek to recover property seized by federal agents." *Ordonez v. United States*, 680 F.3d 1135, 1137 (9th Cir. 2012). The text of the rule states:

> A person aggrieved by an unlawful search and seizure of property or by deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). Unless "the property in question is no longer needed for evidentiary purpose, either because trial is complete, the defendant has pleaded guilty, or ... the government has abandoned its investigation," the movant bears the burden of demonstrating that he or she is entitled to lawful possession of the property. *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, n. 2 (9th Cir. 2010).

In this case, Defendant's phones were not subject to an unlawful search and seizure. Defendant does not set forth any additional authority in support of his motion to return property seized by agents as evidence of his smuggling crime at this stage in

the proceedings.[1]  Defendant's motion for return of property is denied without prejudice.

IT IS HEREBY ORDERED that the motion to suppress evidence and motion to return property (ECF No. 63) is denied.

Dated: 2/1/18

WILLIAM Q. HAYES
United States District Judge

---

[1] Defense counsel declined to provide further briefing in support of this motion.